[L. A. No. 21266. In Bank. Mar. 24, 1950.]

WILLIAM BAFFA, Appellant, v. JOHNNIE A. JOHNSON et al., Respondents.

Laurence J. Rittenband, Sidney H. Rivkin, Frederick Brunner and Raymond A. Nelson for Appellant.

Sturzenacker & Isenberg and Carl B. Sturzenacker for Respondents.

TRAYNOR, J.—Plaintiff brought this action to recover a down payment of $5,000 made under a written contract in which he agreed to buy defendants' cocktail lounge and business for $93,000. The contract provided for the payment of $40,000 in cash with the balance payable at $1,000 per month and secured by a deed of trust. In addition to the down payment, $15,000 was to be deposited on the opening of escrow within 45 days. The contract provided that if the vendee failed to deposit the additional cash payments in escrow, the vendors would retain the $5,000 as liquidated damages. The trial court found on substantial evidence that defendants performed all that was required of them under the contract and that plaintiff refused to open an escrow and abandoned the contract. Judgment was entered for defendants and plaintiff has appealed.

Plaintiff contends that the damages to which defendants are entitled for his failure to perform the contract should be, not the amount paid down in part performance, but an amount determined under Civil Code, section 3307.* ▮ It has frequently been stated that the vendor may retain payments as an alternative remedy to an action for damages for

---

*The detriment caused by the breach of an agreement to purchase an estate in real property, is deemed to be the excess, if any, of the amount which would have been due to the seller, under the contract, over the value of the property to him.''

breach of a contract to purchase real property (*Glock* v. *Howard & Wilson Colony Co.*, 123 Cal. 1, 10 [55 P. 713, 69 Am.St.Rep. 17, 43 L.R.A. 199]; see cases cited in *Barkis* v. *Scott*, 34 Cal.2d 116, 120-121 [208 P.2d 367].) It is now settled, however, that the defaulting vendee may recover part payments after further performance under the contract has terminated, if he proves facts justifying relief under Civil Code, section 3275.† (*Barkis* v. *Scott*, 34 Cal.2d 116 [208 P.2d 367].) As pointed out in the Barkis case, "The facts in the Glock case and similar cases suggest that the reason no attempt was made to rely upon section 3275 was that the defaulting vendee could not qualify for relief under that section and that therefore his only hope of recovering any of the money he had paid or keeping the contract alive was in proving that it was the vendor who was in default. In many cases the amount forfeited was a small fraction of the total price and there was no indication that it exceeded in amount the damage caused the vendor by the vendee's breach. [Citations.] On the other hand, when relief has been sought and denied under section 3275 the courts have frequently pointed out that the damages sustained by the vendor were no less in amount than the vendee had already paid [Citations], or that the nature of the condition that was breached was such that it was impossible to compute the actual damages involved. [Citations.] In other cases the vendee has been unable to continue with performance of the contract, and although such inability prevents his default from being wilful [Citations], it also defeats his right to have the contract kept in force, since he is unable to make full compensation for the default. [Citations.]" (34 Cal.2d at 121-122.)

██ Notwithstanding the evidence in this case that plaintiff's breach was wilful, he contends that since this fact would be immaterial if defendants were suing him for damages, it should also be immaterial in determining whether he is entitled to the return of any part of his down payment. The rule to which he objects is stated in the Restatement of Contracts: "One who is sued for damages is required to pay no more than just compensation, making due allowance for benefits received by the injured party, even though his breach is wilful and deliberate; but one who sues for restitution of value that he

---

† "Whenever, by the terms of an obligation, a party thereto incurs a forfeiture, or a loss in the nature of a forfeiture, by reason of his failure to comply with its provisions, he may be relieved therefrom, upon making full compensation to the other party, except in case of a grossly negligent, willful, or fraudulent breach of duty."

has given in part performance can recover none of it if his breach is wilful and deliberate. . . .'' (Rest., Contracts, § 357, comment e.) It also finds expression in sections 3275 and 3369 of the Civil Code. Section 3275 makes it a condition of relief from forfeiture that the breach be neither grossly negligent, wilful, nor fraudulent. Section 3369 provides that ''Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture *in any case*. . . .'' (Italics added.) Under these sections a defaulting vendee seeking restitution of part of his payments will be denied relief if his breach is wilful. On the other hand, if he is able to prove that the vendor has received more than the benefit of his bargain, the court is precluded by section 3369 from quieting the vendor's title unless he refunds the excess. (*Barkis* v. *Scott*, 34 Cal.2d 116, 121 [208 P.2d 367], and cases cited.)

It is contended, however, that the nature of the breach is material only when the vendee is seeking under section 3275 to keep the contract in force; that when the vendee is seeking to recover the excess of his part payments over the damage he has caused the vendor, the provisions of the Civil Code governing the measure of damages for breach of contract provide an alternative basis for relief independently of section 3275. Whatever the merits of this contention, plaintiff has failed to prove that the down payment exceeds defendants' damages. He introduced no evidence to prove that when he repudiated the contract, the property was worth more than $88,000 to defendants, namely, the $93,000 purchase price less the $5,000 down payment. Plaintiff contends, however, that defendants' own evidence proves that they lost no more than $1,500 as a result of his breach. Seven months after plaintiff repudiated the contract, defendants sold the business less the real property for $48,000, and the purchaser received an option to buy the real property for $50,000. Meanwhile defendants had invested an additional $6,500 in the business. Plaintiff contends that this transaction is equivalent to a resale at $91,500 when an adjustment is made for the additional investment and that defendants should therefore refund $3,500. Even if the price of the real property provided in the option were a fair measure of its value to defendants at the time of the resale, there is no evidence concerning the value of the property at the time plaintiff repudiated the contract. One of the defendants testified that values were falling when the contract was made. After plaintiff's breach any benefit from a rising market would

rightfully accrue to defendants as owners of the property, not to plaintiff. If its value had dropped to $88,000 at the time plaintiff repudiated the contract, and defendants resold it at that price, there would clearly be no unjust enrichment. Nor would there be any if they retained the property and the value rose.

Plaintiff cannot recover any of his down payment since he has failed to prove that defendants' damages were less than the amount he had paid.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.