[Civ. No. 33423.   Second Dist., Div. One.   July 29, 1969.]

JACK M. SWEET et al., Plaintiffs and Appellants, v. THOMAS RELIS et al., Defendants and Respondents.

*Assigned by the Chairman of the Judicial Council.

David H. Caplow and Stanley Sapiro for Plaintiffs and Appellants.

Kirsch & Arak and Jay S. Bulmash for Defendants and Respondents.

FOURT, Acting P. J.—Plaintiffs Jack M. Sweet and Zisz, Inc., a California corporation (hereinafter sometimes referred to as Zisz), the defaulting purchasers of a snack shop, appeal from a judgment by the trial court, sitting without a jury, determining that the sellers, Thomas and Cynthia Relis, who resumed possession and operation of the business, are not liable to appellants, or either of them, for the payment of damages or restitution.

Appellants' sole contention is that the trial court's finding that "the value of the snack shop business had declined from $30,000.00 at the date of sale to $20,000.00 as of the date that the plaintiffs vacated the premises" is not supported by the evidence. Assuming that the trial court erred in so finding, appellants contend that respondents became obligated upon resuming operation of the business to reimburse appellants for all sums paid to or for the benefit of respondents in excess of their actual damages, and that since respondents in fact suffered no damages they should make restitution of the total amount of appellants' investments and expenditures with respect to the snack shop purchase and operation on the theory of unjust enrichment. Appellants' position is without merit.

The record on appeal consists of a partial clerk's transcript, an engrossed settled statement on appeal (Cal. Rules of Court, Rules on Appeal, rule 7) and all exhibits introduced at the trial. The second amended complaint alleged, and respondents have admitted, that prior to December 4, 1964, Thomas and Cynthia Relis, husband and wife (hereinafter

sometimes together referred to as Relis) were the owners and operators of the Don-Re Snack Shop. The business was conducted within the premises of the Don-Re Market and operated under a nine-year lease executed June 4, 1964, by and between Relis and their landlords, Irving A. and Daniel Wiggins. Relis had also purchased from their landlords under a conditional sales contract the snack shop fixtures and equipment. On or about December 4, 1964, Relis entered into a written escrow agreement for the sale of the business, including the furniture, fixtures, equipment, good will, trade name, and leasehold interest, to Jack M. Sweet ''or corporate nominee to be formed'' for the price of $30,000 plus merchandise at inventory value. According to the understanding and agreement between the purchaser and the sellers, Sweet formed Zisz, Inc., and on or about January 21, 1965, assigned thereto all of his right, title and interest in and to the contract of purchase and the snack shop business. Sweet, who assumed personal liability as a guarantor on the original lease and conditional sale contract executed by Relis and Wiggins, was at all times relevant to this action the president of Zisz, a California corporation, wholly owned and controlled by Sweet and his family. Sweet and Zisz further allege that during their five months of operation the business showed a substantial and continuing loss, and in June of 1965 appellants gave up the operation. Appellants then instituted the present action for damages and declaratory relief claiming, alternatively, that they were entitled to rescind their agreement on grounds of Relis' fraudulent misrepresentations, or that a mutual rescission of the purchase contract and all oblgations incurred relative thereto had taken place; in lieu thereof, and in the event the court should find willful default by appellants, they alleged a further claim for restitution on the basis of unjust enrichment.

Relis by answer denied appellants' right to rescission for fraud, denied the allegations of mutual rescission, and by way of affirmative defense alleged that they ''resumed possession of said business solely for the benefit of said plaintiffs, and in no way agreed nor accepted any rescission of said contracts and continues [sic] to hold said business for the benefit of said plaintiffs.'' The answer further alleged that any losses which appellants incurred in the operation of the snack shop business were due to their own mismanagement, and that since Relis had resumed possession and operation of the business it had operated profitably once more.

The engrossed settled statement on appeal is not narrative in form but instead contains a condensed statement of the testimony of certain witnesses which purports to constitute all testimony relative to the issue of unjust enrichment. This statement recites that Sweet testified that he became president and sole stockholder in Zisz at its formation; that it was agreed by purchaser and seller prior to the close of escrow for the transfer of the business that Sweet would organize a corporation to which he would assign his rights in the purchase contract, and that he did so organize and transfer to Zisz such rights; that funds were disbursed from escrow to make certain itemized payments; that after close of escrow Sweet made payments on the conditional sale contract and promissory notes relating to the snack shop purchase; that as president of Zisz he went into possession of the snack shop on January 22, 1965; that he closed the business, gave the keys to Wiggins, and sent a notice of rescission on June 8, 1965; and that Relis thereafter reopened the business.

The engrossed statement further relates that accountant Sidney Pazzoff testified that he prepared the journal, ledger sheets and statement of financial condition introduced by appellants, and accountant George Sherman testified that he prepared a cost analysis for respondents from their profit and loss statement. Business opportunities broker, Sid Simon, testified that he originally sold the snack shop to Relis; that Relis sold the business to Sweet for $30,000; and that when Relis was forced to reopen the business after Sweet gave it up, he offered it for sale at only $20,000.

Thomas Relis testified that when he and his wife sold the Don-Re Snack Shop they intended to retire and travel, but that after Sweet defaulted and abandoned the business they were forced to take over the snack bar operation again in order to preserve the business. Relis testified further that after he and his wife took over the business again he maintained payments on the rent, the utilities, and the equipment under the conditional sale contract; that the books introduced by Relis at trial accurately reflected the amount of profit from the business; and that after Relis resumed operation of the snack shop it became profitable once again.

The undisputed findings of the trial court show that Sweet and Zisz paid into escrow as part of the purchase price for the Don-Re Snack Shop the sum of $9,905.23. Appellants also assumed a balance of $14,139.56 due on the existing conditional sale contract and executed in favor of Relis two

promissory notes, one in the amount of $4,425.07 and the other, for assignment to business opportunities broker Sid Simon, in the amount of $1,000. Relis received out of escrow $5,953.86 in cash and the balance was disbursed for various authorized payments and expenses.

Although appellants alleged that Relis misrepresented to them the profitability of the business, the trial court found that Relis represented truly that the snack shop showed approximately $84,000 annual gross and $11,000 annual net profit at or about the time of appellants' purchase. During the period of appellants' operation of the snack shop, from January 23, 1965, until on or about June 14, 1965, the operation showed a net cash loss of $5,459.38 and appellants became indebted to business creditors for the additional sum of $6,186.68. Zisz paid the rent and other lease payments, the conditional sale contract installments and monthly payments on the promissory notes during that time, but the trial court found that appellants were not damaged by payments which they made in connection with the operation of the business.

On or about June 8, 1965, Sweet, as president of Zisz, executed and served on Relis a notice of rescission of the contract for the purchase of the business and offered to surrender the premises pursuant to said notice. Relis rejected the rescission offer and the trial court found that appellants had no basis for unilateral rescission. On or about June 14, 1965, appellants wilfully defaulted on their contract by abandoning the snack shop premises without cause and refusing to pay their obligations, well knowing that Relis remained liable on the lease and conditional sale contract. Although appellants then attempted to return the keys to the business premises to Relis, respondents refused to accept them and appellants therefore delivered the keys to Wiggins. Relis, who had performed all of the terms and conditions of the contract, consequently and for the sole purpose of mitigating damages, on or about June 18, 1965, again took possession of the premises and resumed operation of the snack bar for appellants' account. Thenceforth and up to and including the time of the trial, Relis continued to operate the snack bar and to make the rental and other payments due under the lease and the conditional sale contract. Appellants still owed Relis the sum of $3,504.07 on their promissory note at the time of trial.

The findings of the trial court support its conclusions that Relis perpetrated no fraud on appellants; that there was no mutual rescission of the purchase agreement, the lease, the

conditional sale contract or the promissory notes executed by appellants; that appellants' willful default damaged respondents who were forced thereby to resume possession and operation of the snack bar to mitigate their losses and, accordingly, had to make payments called for by the lease and conditional sale contract, as well as payments on the promissory note which they had assigned to Sid Simon with recourse; that respondents were further damaged because they received no payments except $921 on the promissory note for $4,425.07 executed in their favor by appellants; that appellants remained liable on the lease and conditional sale contract; that Relis had a duty to preserve the security of the real and personal property vacated by appellants in order to reduce their liability to Wiggins on the lease and conditional sale contract and to mitigate the damages occasioned by the willful default and breach by appellants; that respondents' damages exceeded the value of appellants' partial performance; that appellants are not entitled to restitution of any sums of money paid by them in performance of the purchase agreement, the lease, the conditional sale contract, or the promissory notes executed by them; and that appellants remain liable to Relis for the balance due on the promissory note in Relis' favor.

Appellants contend that the trial court's finding that the value of the Don-Re Snack Shop declined from $30,000 at the time of appellants' purchase to $20,000 at the time appellants vacated the premises is unsupported by the evidence. There is, however, substantial evidence to sustain this finding in the condensed statement of testimony and the exhibits relating to the profitability of the business. During the 1963 calendar year and, presumably, continuing until on or about the time of the sale the Don-Re Snack Shop showed an $84,000 annual gross and Relis was taking home $150 weekly on the basis of an approximately $11,000 net annual profit. During the succeeding five months under appellants' operation, however, the business showed a loss of about $11,000. The Relis couple, who desired never to have to operate the snack shop again after its sale, were forced to resume operations when appellants abandoned the premises and wilfully defaulted on their obligations. At that time the business had so deteriorated that appellants' financial statement and profit and loss relative to the operation would no longer sustain a $30.000 selling price. On this basis, Relis placed a value of $20,000 on the business in an attempt to find someone inter-

ested to build up and establish a profitable business once more. It is relevant and material only to the value placed upon the business by the parties at the time of its acquisition by appellants that the snack shop operated profitably and once more sustained a $150 weekly draw after Relis resumed management.

Under the findings of fact and conclusions of law which are not attacked by appellants, they are not legally entitled to any recovery on the theory of unjust enrichment. "When a vendee has materially breached his contract, the vendor has an election to rescind or to enforce the contract. [Citations.] The defaulting vendee, however, has no such election. Otherwise, the contract of sale would in effect be a lease with an option to purchase." (*Honey* v. *Henry's Franchise Leasing Corp.*, 64 Cal.2d 801, 804 [52 Cal.Rptr. 18, 415 P.2d 833].) Even assuming, however, that appellants had been able to demonstrate circumstances to bring themselves within the asserted legal theory, they failed in their burden of proof.

The judgment is sustained.

Lillie, J., and Thompson, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 24, 1969.