[Civ. No. 51251. First Dist., Div. Two. Oct. 5, 1981.]

Estate of DOROTHY W. LEE, Deceased.
RUSSEL V. LEE, as Executor, etc., Petitioner and Appellant, v.
JEAN S. GLASS, as Executor, etc., Objector and Respondent.

COUNSEL

Carlstrom, Heyler & Mitchell, Theodore C. Carlstrom and J. Ronald Hershberger for Petitioner and Appellant.

Paul B. Smith, Dunham B. Sherer and Atkinson & Farasyn for Objector and Respondent.

James O. Moses as Amicus Curiae on behalf of Objector and Respondent.

## Opinion

**TAYLOR, P. J.**—Russel V. Lee, executor of the will of his deceased wife Dorothy, appeals from two orders[1] of the probate court denying and dismissing his motion to vacate that portion of the order of final distribution directing him to pay attorney fees for extraordinary services rendered to the estate by its former attorney, Donald Glass,[2] by delivery of a deed to a real property interest owned by him as an individual. For the reasons set forth below, we have concluded that the portion of the order for final distribution directing the payment of the extraordinary attorney fees was void on its face for lack of subject matter jurisdiction; accordingly, the court erred in concluding that it had no jurisdiction to consider that part of the executor's motion to vacate the order for final distribution.

The pertinent facts as revealed by the record are as follows:

Dorothy W. Lee died on September 22, 1972. On the petition of her surviving husband, Russel V. Lee, her will was admitted to probate and Russel was qualified as executor. Pursuant to paragraphs five and six of the will, the residue of Dorothy's estate was bequeathed one-third to Russel and two-thirds to the trustees of trusts created for the benefit of the children of the marriage. The residue included Dorothy's half of an undivided seven-eighths interest in real property known as Portola Slopes. In his individual capacity, as his share of the community property, Russel owned the remaining half interest in seven-eighths of Portola Slopes.

Instead of a distribution of Dorothy's interest in Portola Slopes according to the above one-third to two-thirds formula, the executor's petition for preliminary distribution requested that he receive a life estate and the trusts a remainder. The valuation of these respective interests was to be computed on the basis of applicable U. S. Treasury Tables for life interests; if the life interest was valued at more than one third, the deficiency was to be made up by an "equalizing distribution" of cash. The November 7, 1973, petition for preliminary distribution carried out this plan.

---

[1]The orders are the initial order of June 3 and the amended order of July 3, 1980.

[2]Respondent, Jean S. Glass (Glass) is the surviving spouse and executor of the will of Donald.

The petition for final distribution was filed on March 7, 1975. At this time, the executor owned in his individual capacity, his own half interest in seven-eighths of Portola Slopes and a life estate in the second half; the estate had no interest. The pertinent portion of the petition for final distribution alleged that: 1) Glass, Palmer & Lee, attorneys at law, had rendered extraordinary services,[3] for which the estate tax auditor had allowed a reasonable value of $15,000; 2) it was in the best interests of the estate and the beneficiaries that the executor transfer to Donald and Jean S. Glass a three thirty-seconds interest in Portola Slopes, subject to the executor's life estate, for a $13,498 credit on the $15,000 extraordinary fees due to Glass, Palmer & Lee.

Paragraph six of the final order directed that the attorney fees be paid partly in cash and the "balance by a deed for an interest in real property owned by the executor, which shall be delivered into an escrow with instructions to record it when the attorneys have completed their work in the estate." No appeal from this order was taken.

Four years later, on March 2, 1979, the executor filed his instant verified petition to set aside the extraordinary attorney fees portion of the then final order of March 7, 1975, on grounds of lack of jurisdiction, fraud and mistake. At the same time, the executor substituted his current counsel as attorneys of record for the estate in place of Glass, Palmer & Lee. The executor's amended or supplemental petition was filed on October 9, 1979. The executor sought permission to pay the extraordinary fees in cash. Notice of the hearing was given to Glass, Palmer & Lee[4] and Jean S. Glass.

After a hearing, the court denied all of the motions of the parties and entered the two orders that are the subject of this appeal. The court ruled that: 1) the order relating to the extraordinary attorneys' fees was not void on its face; 2) as to the extrinsic fact questions of fraud and mistake, it was without general equity jurisdiction to determine the dis-

---

[3]Exhibit B to the petition for final distribution detailed the extraordinary services performed.

[4]After the firm ceased operations in 1978, Catherine L. Lee, one of the surviving partners, was attorney of record for the estate; Catherine L. Lee is also a trustee of some of trusts created by the will of Dorothy Lee. The other surviving partner, James D. Palmer, subsequently requested deletion of his name from the notices. The record indicates that Catherine L. Lee also appeared at and participated in the instant proceedings. Accordingly, Glass' objections to Catherine L. Lee's amicus brief are not well taken. We have given Catherine L. Lee permission to file her brief as an amicus.

pute between the executor as an individual and Jean Glass, either as an individual or as executrix of Donald's estate. Therefore, the court dismissed the executor's instant petition and denied as moot Glass' motion to intervene and for leave to file objections to the instant petition.

An appealable order once final cannot be collaterally attacked where not void on its face (*Estate of Joslyn* (1967) 256 Cal.App.2d 671,. 675 [64 Cal.Rptr. 386]). To show that the portion of the final order relating to the extraordinary attorneys' fees was void on its face, the executor had the burden of showing, by reference solely to the judgment roll, that the court acted without or in excess of its jurisdiction (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 10, pp. 3590-3591; *Estate of Joslyn, supra*, p. 676). Contrary to Glass's contention, where the record on its face discloses a want of jurisdiction, the judgment or order may be attacked "*at any time*" on this ground (*Estate of Poder* (1969) 274 Cal.App.2d 786, 790 [79 Cal.Rptr. 484]; italics by the court).

The judgment roll consists of the executor's petition for final distribution, the order of March 20, 1975, and the relevant notice of hearing (Prob. Code, § 1242, subd. 1). The judgment roll reveals that: 1) the executor's real property interest in Portola Slopes that he was ordered to convey was his individual interest; 2) at the time the order for the extraordinary attorneys' fees was made, the estate had no interest in Portola Slopes. Thus, Portola Slopes was not an asset of the estate when the order for extraordinary fees was made.

All proceedings in the probate court are limited and special or limited and statutory (*Estate of Schloss* (1961) 56 Cal.2d 248, 253 [14 Cal.Rptr. 643, 363 P.2d 875]). The power of the probate court extends only to the property of the decedent. An attempt to take and distribute the property of a living person is a violation of due process (7 Witkin, Summary of Cal. Law (8th ed. 1974) § 237, p. 5745; *Stevenson v. Superior Court* (1882) 62 Cal. 60; *Estate of Paulsen* (1917) 35 Cal.App. 654 [170 P. 855]).

Thus, the court had no subject matter jurisdiction over the executor's individual interest in Portola Slopes. Glass argues that the executor consented to the payment of the extraordinary fees with his said interest in real property by requesting the payment of the fee in this manner in his petition for final distribution. It is elementary that subject matter jurisdiction cannot be acquired by consent (*Schlyen v.*

*Schlyen* (1954) 43 Cal.2d 361, 375 [273 P.2d 897]). There can also be no estoppel, as a void order will be declared void (*Estate of Joslyn, supra*, 256 Cal.App.2d 671, 676).

■ Glass' argument that the arrangement was a valid agreement between the executor and the former attorney ignores the rule that attorneys' fees in a probate proceeding are strictly statutory and do not arise from contract (*Estate of Johnston* (1956) 47 Cal.2d 265, 272 [303 P.2d 1]). Historically, the obligation was the personal obligation of the executor but could not be enforced directly by the attorney who then was not a person interested in the estate (*Houghton* v. *Coberly* (1962) 201 Cal.App.2d 820, 823 [20 Cal.Rptr. 489]). Currently, the attorney for the executor is a "person interested" in the estate (*Estate of McMillin* (1956) 46 Cal.2d 121 [292 P.2d 881, 56 A.L.R.2d 1175]). However, the executor or administrator is not personally liable (*Reinstein, Land & Katz* v. *Clune* (1973) 30 Cal.App.3d 321, 325 [105 Cal.Rptr. 454]; *Zagoren* v. *Superior Court* (1931) 117 Cal.App. 548, 551 [4 P.2d 279]). The attorney's only right to recover fees for his services is against the estate (*Hatch* v. *Bush* (1963) 215 Cal.App.2d 692, 705 [30 Cal.Rptr. 397, 13 A.L.R.3d 503]).

■ Probate Code section 910, subdivision (a) provides, so far as pertinent, that attorneys' fees *shall be allowed out of the estate.* Probate Code section 911 sets forth the procedure and permits that on the hearing, the court shall make an order requiring the executor to pay the attorney "out of the estate such compensation, on account of services rendered up to that time." Here, the court ordered that the attorney fees were to be paid in kind by the conveyance of a real property interest owned by the executor as an individual. Thus, the order was not only beyond the jurisdiction of the probate court, but also contrary to the statutory mandate as to the source of payment.

Glass' reliance on Probate Code section 911 and *Estate of Ledbetter* (1958) 50 Cal.2d 283, 287 [324 P.2d 884], is not apposite. In *Ledbetter*, the administrator commenced an action in the federal court against the United States seeking damages for wrongful death on behalf of the estate and subsequently wanted to settle the action. In upholding the administrator's use of instructions (pursuant to Prob. Code § 588) to obtain an order authorizing the settlement and payment of costs and attorney fees in the wrongful death action, our Supreme Court noted, at page 287, that Probate Code section 911 was not an exclusive proce-

dure. *Ledbetter* thus did not involve a source of funds outside the estate for payment of attorney fees.

Glass' citation of *Dobbins* v. *Title Guar. & Trust Co.* (1943) 22 Cal.2d 64 [136 P.2d 572], is equally inapposite. In *Dobbins*, the parties were appointed coexecutors and the court ordered payment of extraordinary fees of $15,000 from the estate. After this amount was paid to the defendant, the plaintiff coexecutor filed an independent action to recover one-half of the fee on grounds of a prior oral agreement. In reversing a judgment in favor of the plaintiff, our Supreme Court held, at page 68, that the plaintiff should have applied to the probate court for a further and supplemental decree as to the apportionment of the fees between the coexecutors.

We conclude, therefore, that here, the court below had jurisdiction to hear the portion of the executor's instant petition that sought to vacate the order for extraordinary fees on grounds of lack of subject matter jurisdiction. Accordingly, that portion of its orders must be reversed. However, the court below properly concluded that it had no jurisdiction to determine the contractual claims of Glass against the executor in his individual capacity or the merits of the transaction (i.e., the allegations of fraud and mutual mistake). A court sitting in probate has no power to determine the rights of creditors in an heir's or legatee's share of a decedent's estate (*McGee* v. *Allen* (1936) 7 Cal.2d 468 [60 P.2d 1026]). That portion of each order must be affirmed.

The court below is directed to: 1) vacate the portion of the March 1975 order of final distribution for the payment of the extraordinary attorney fees; 2) hold a hearing and take evidence to determine the amount of extraordinary fees properly payable from the estate of Dorothy Lee, including fees for services rendered since the order of final distribution; the attorneys entitled to compensation and the amount to which each is entitled; and to order the fees paid in cash pursuant to Probate Code section 911. Each party to bear its own costs on appeal.

Miller, J., and Smith, J., concurred.

A petition for a rehearing was denied November 4, 1981, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied December 3, 1981.