[No. C000528. Third Dist. Dec. 28, 1987.]

Estate of TROY E. SCOTT, Deceased.
CLEO R. SCOTT, as Executrix, etc., Petitioner and Appellant, v.
VADA WITTE, Objector and Respondent.

**COUNSEL**

Stanley Sedor for Petitioner and Appellant.

Howell & Howell, Steven J. Howell and M. Melanie Howell for Objector and Respondent.

---

**OPINION**

**MARLER, J.**—Cleo R. Scott, executrix and wife of the decedent, has appealed from the order denying her Probate Code[1] section 851.5 petition to recover one-half of the decedent's inter vivos gift of community personal property to Vada Witte. Scott contends the court committed reversible error in holding that she could not properly bring her claim in the probate court. We shall affirm.

### FACTS RELEVANT TO THIS PROCEEDING

Scott and the decedent were married on November 7, 1931. Over the course of their marriage, they owned and operated a business under the name of Scott Electric in San Leandro and acquired several bank accounts and parcels of real property, all of which were held in joint tenancy. The couple ceased living together as husband and wife in November 1975. Scott remained in San Leandro while decedent resided on one of their ranches located in Butte County.

Sometime in 1975, Witte moved in with the decedent. She did the housework, assisted with the bookkeeping and helped take care of the livestock. On December 31, 1982, decedent revoked a power of attorney he had previously granted to Scott. On the same date, he assigned to Witte his interest in a savings account he held in joint tenancy with Witte. He also assigned to Witte his interest in personal property which he claimed he held in joint tenancy with her. This transfer of property, which ultimately resulted in the present appeal, included livestock, saddles and household furnishings.

In January 1982, decedent, who had suffered from a lung ailment since 1966, was diagnosed as having terminal cancer. At that time, he took Scott's name off of a checking account and added Witte's name instead as he wanted Witte to be able to write checks for medical and household expenses.

Decedent died on February 6, 1983, and his will bequeathed all of the real and personal property he possessed upon his death to Scott. Scott was

---

[1] All further statutory references are to the Probate Code unless otherwise indicated.

appointed as the executrix of his estate on May 11, 1983. Acting in her capacity as executrix, on May 24, 1987, she filed a petition pursuant to section 851.5 to recover personal property of the decedent in which she alleged that Witte's undue influence, coercion and intimidation had caused decedent to transfer the personalty and savings account to Witte.

Witte's answer denied these allegations and asserted that commencing in 1975, she and decedent had jointly operated a farming venture. At that time, decedent's interest in the farming operation was his separate property and much of the personalty subsequently transferred to Witte was purchased with earnings from their joint venture. Moreover, the gift to Witte was made in affirmance of an existing oral agreement that the property was jointly theirs and because decedent felt it was necessary to protect Witte's interest from Scott.

Thereafter, Scott abandoned her original theory of recovery and chose to pursue issues she contended were raised by the answer. She claimed that the gifts of personalty were not decedent's separate property, but instead were community assets that had been transferred for less than substantial consideration without Scott's consent in violation of Civil Code section 5125. She sought to recover her community one-half interest pursuant to section 201.8. Witte argued that Scott would have to amend her pleadings to proceed under this new theory.

On August 24, 1984, a pretrial conference was held and the clerk's minutes reflect the following disposition: "The Court will issue a pre-trial order which will supercede [sic] pleadings. Issues will be as those by [Witte's attorney] issued on separation on [sic] the property and other ancillary matters. Undue influence will no longer be before the Court."[2]

The matter went to trial in this posture and on November 20, 1984, the court ruled that as of November 15, 1975, the Scotts had been living separate and apart within the meaning of Civil Code section 5118. Section 5118 provides: "The earnings and accumulations of a spouse . . . while separate and apart from the other spouse, are the separate property of the spouse."

However, prior to rendering his decision, the judge became aware of procedural and jurisdictional problems with the case. He apprised the

---

[2] Witte contends this is not a valid pretrial order as it does not comply with the requirements of former rule 214 (repealed effective Jan. 1, 1985). However, there is no evidence in the record that she raised this argument below. In fact, the parties litigated the matter in conformance with the defective pretrial order and not the pleadings. " 'A party cannot permit an issue to be litigated and on appeal escape the consequences by claiming that such issue was not pleaded.' [Citations.]" (*Collison* v. *Thomas* (1961) 55 Cal.2d 490, 498 [11 Cal.Rptr. 555, 360 P.2d 51].)

parties of his concerns, they submitted briefs on the issue, and the judge thereafter rendered his decision denying relief. The court stated Scott could not seek relief pursuant to section 201.8 as the statute only applied to quasi-community property and there was no quasi-community property sought to be recovered. In addition, the court determined that Scott, as executrix, could not assert a personal claim for community property in a proceeding brought under section 851.5. Moreover, the court was without jurisdiction to adjudicate the matter.

DISCUSSION

I

█ Scott contends the court incorrectly found she could not seek relief pursuant to former section 201.8.[3] She concedes the property in question was not quasi-community property, but apparently argues this code section applies equally to community property. She is incorrect.

Former section 201.8 provided in pertinent part: "Whenever any married person dies domiciled in this State who has made a transfer to a person other than the surviving spouse, without receiving in exchange a consideration of substantial value, of property in which the surviving spouse had an expectancy under Section 201.5 of this code at the time of such transfer, the surviving spouse may require the transferee to restore to the decedent's estate one-half of such property, its value, or its proceeds, if the decedent had a substantial quantum of ownership or control of the property at death. . . ."

Former section 201.5[4] provided in part: "Upon the death of any married person domiciled in this state, one-half of the following property in his or her estate shall belong to the surviving spouse and the other one-half of such property is subject to the testamentary disposition of the decedent, . . . [¶] (a) All personal property wherever situated, and all real property situated in this state, heretofore or hereafter acquired by the decedent while domiciled elsewhere which would have been the community property of the decedent and the surviving spouse if the decedent had been domiciled in this state at the time of its acquisition. [¶] (b) All personal property wherever situated, and all real property situated in this state, heretofore or hereafter

---

[3] Section 201.8 was repealed by Statutes 1983, chapter 842, operative January 1, 1985, but pursuant to section 105, continues to apply to the estate of decedents who died before January 1, 1985.

[4] Section 201.5 was repealed by Statutes 1983, chapter 842, operative January 1, 1985, but, pursuant to sections 105 and 6103, continues to apply to estates of decedents who died before January 1, 1985.

acquired in exchange for real or personal property, wherever situated, which would have been the community property of the decedent and the surviving spouse if the decedent had been domiciled in this state at the time the property so exchanged was acquired. . . . [¶] *For purposes of this chapter, . . . the property defined in this section shall be known as 'quasi-community property.'*" (Italics added.)

The plain, unambiguous language discloses sections 201.5 and 201.8 only apply to quasi-community property. (*Estate of Murphy* (1976) 15 Cal.3d 907, 917, fn. 5 [126 Cal.Rptr. 820, 544 P.2d 956].) There is no such property involved here. The probate court ruled correctly with respect to this issue.

## II

Scott also asserts the probate court erroneously determined it was without jurisdiction and that, as the executrix, Scott was without standing to proceed under section 851.5 to recover her one-half interest in the community property gift made by the decedent. Again, she is incorrect.

Section 851.5 provides in part: "If a person dies in possession of, or holding title to, real or personal property which, or some interest in which, is claimed to belong to another, or dies having a claim to real or personal property, title to or possession of which is held by another, the executor, administrator, or any claimant may file with the clerk of the court a verified petition setting forth the facts upon which the claim is predicated. Thereupon the clerk shall set the petition for hearing by the court . . . ."

The statute thus provides a vehicle for the executrix to recover property that belongs in the estate, or for a claimant to recover from the estate property that rightfully belongs to the claimant. Generally, the term "estate" is used to describe the total assets of the decedent. (*Estate of Pezzola* (1980) 112 Cal.App.3d 752, 756 [169 Cal.Rptr. 464].) Therefore, for the executrix to proceed under section 851.5 she must be attempting to recover assets in which there is an interest belonging to the decedent, hence, to the estate.

Moreover, whether or not the executrix is proceeding under section 851.5, the power of the probate court extends only to the property of the decedent. (*Estate of Lee* (1981) 124 Cal.App.3d 687, 692 [177 Cal.Rptr. 229].) "The rule is that 'while the superior court, sitting in probate, is a court of general jurisdiction, "the proceedings being statutory in their nature, the court has no other powers than those given by statute and such incidental powers as pertain to it and enable the court to excercise the

jurisdiction conferred upon it, and can only determine those questions or matters arising in the estate which it is authorized to do. . . ." ' [Citations.]" (*Estate of Bissinger* (1964) 60 Cal.2d 756, 764 [36 Cal.Rptr. 450, 388 P.2d 682, 19 A.L.R.3d 506].) Unless the personal property in question belonged in the decedent's estate, neither the executrix nor the probate court had authority to proceed.

■■■ Here Scott was attempting to pursue her personal rights as decedent's wife under Civil Code section 5125, subdivision (b), which provides: "A spouse may not make a gift of community personal property, or dispose of community personal property without a valuable consideration, without the written consent of the other spouse." During her husband's lifetime, Scott was entitled to have the entire gift made in violation of this section set aside, but after his death her recovery became limited to her one-half share of the community property on the theory that her husband's testamentary powers validated the gift of his one-half interest. (*Gantner* v. *Johnson* (1969) 274 Cal.App.2d 869, 876 [79 Cal.Rptr. 381].) Consequently, the section 851.5 petition was inappropriate as the property Scott was attempting to recover was her own share of the community property and not decedent's.

■■■ Scott claims that a probate court is a proper forum for the adjudication of this matter. However, the cases she cites for this proposition are inapposite as they were all decided prior to 1975. Until 1975, section 202 provided that a surviving wife's claim to her share of community property came to her through probate and was subject to administration as part of her deceased husband's estate. (*Estate of Murphy, supra,* 15 Cal.3d at p. 916, fn. 4; *Central Bank* v. *Superior Court* (1955) 45 Cal.2d 10, 17 [285 P.2d 906].) In contrast, a surviving husband's claim to his share of the community property was not subject to administration. (*Central Bank, supra,* at p. 17.) Thus, a husband's claim regarding his community share could not be litigated in a probate proceeding, but a wife's claim could as her community interest was considered a part of the estate. (*Ibid*; *Estate of Phillips* (1954) 123 Cal.App.2d 570, 574 [266 P.2d 954].)

This disparity was eliminated with the revision of section 202,[5] effective January 1, 1975. (Stats. 1974, ch. 11, § 2, p. 18.) Presently, upon the death

---

[5] Section 202 has been repealed and its provisions continued in section 649.1. (Stats. 1983, ch. 842, § 36, p. 3040.) However, section 202 continues to apply to estates of decedents who died before January 1, 1985. (Stats. 1983, ch. 842, § 58, p. 3092.) It provides in pertinent part: "(a) [W]hen a husband . . . dies testate and by his . . . will bequeaths or devises all or a part of his . . . interest in the community property or quasi-community property to the surviving spouse, it passes to the survivor . . . and no administration is necessary. [¶] (b) Notwithstanding subdivision (a), upon the election of the surviving spouse or the personal representative, . . . . the interest of the deceased spouse in the community property or quasi-community property, or both, the interest of the deceased spouse and the surviving spouse in the

of a married person, one-half of the community property belongs to the surviving spouse. (§ 201.)[6] The surviving spouse's community interest generally need not be administered in the deceased spouse's estate, but may be so administered upon the timely written election of the surviving spouse or personal representative. (§ 202, subdivision (b); *Estate of Murphy, supra*, 15 Cal.3d at p. 916, fn. 4) This election must be made within four months after the issuance of letters of administration, or within such further time as the court may allow upon a showing of good cause. (§ 202, subd. (b).) Here, the record discloses no evidence that any such written election was ever made. Therefore, as Scott's community interest in the personal property in question was not subject to administration and was not part of the decedent's estate, the probate court was without subject matter jurisdiction to adjudicate the matter. (*Estate of Lee, supra*, 124 Cal.App.3d at p. 692.) The court did not err when it denied Scott's petition pursuant to section 852.[7]

### III

Finally, Scott argues that the petition was no longer a *section 851.5* petition as the August 24, 1984, "pretrial order" superseded the pleadings for all purposes, and therefore the probate court was not limited by the provisions of that statute.

First, it is unclear whether the alleged "pretrial order" abrogated the entire petition or merely changed the underlying theory of recovery. Second, as the disputed property was not part of the decedent's estate, the probate court was without authority to set the gift aside even if Scott's claim was no longer premised upon section 851.5. Third, although acting in her capacity as executrix, Scott was actually attempting to pursue a personal claim as the decedent's spouse. ▮ While an executrix may bring a personal claim against the estate *Wilkerson* v. *Seib* (1942) 20 Cal.2d 556, 562-563 [127 P.2d 904]); (*Estate of Kelpsch* (1928) 203 Cal. 613, 616-617 [265 P. 214], there is no authority for the proposition that an executrix may be permitted to pursue a personal claim against a third party in the probate court regarding property that is not part of the decedent's estate. Scott's assertion that this was no longer a section 851.5 petition is unavailing.

community property or quasi-community property, or both, may be administered under Division 3 (commencing with Section 300). The election must be made within four months after the issuance of letters testamentary or of administration, or within such further time as the court may allow upon a showing of good cause, by a writing specifically evidencing the election filed in the proceedings for the administration of the estate of the deceased spouse . . . ." (Stats. 1980, ch. 955, § 2, p. 3008.)

[6] Section 201 has been repealed by Statutes 1983, chapter 842, operative January 1, 1985, but, pursuant to existing sections 105, 6103, 6414, continues to apply to estates of decedents who died before January 1, 1985.

[7] Section 852 provides in part: "[T]he court shall not grant a petition under Section 851.5 if it determines that the matter should be determined by civil action. . . ."

The judgment is affirmed.

Blease, Acting P. J., and Carr, J., concurred.